Henry V. SMITH, Administrator of the Estate of Kay Smith, Deceased, et al., Appellants,

v.

COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellee.

Court of Appeals of Kentucky.

June 25, 1971.

Richard L. Frymire, Moore, Morrow, Frymire & McGaw, Madisonville, Johnston & Eldred, Princeton, for appellants.

Carl T. Miller, Jr., Dept. of Highways, Frankfort, Perry Lewis, Dept. of Highways, Madisonville, for appellee.

DAVIS, Commissioner.

On May 14, 1967, Dwight Smith and his sister, Kay Smith, were passengers in an automobile owned and driven by their brother, Gregory Smith. Dwight and Kay were asleep in the car when Gregory lost control of it on U. S. Highway 41A at a point about .8 of a mile south of Nortonville. Kay and Dwight Smith died as a result of injuries received in the accident. Henry V. Smith, as administrator of the estates of Kay and Dwight, instituted this proceeding before the Board of Claims seeking a maximum recovery from the Commonwealth of Kentucky, Department of Highways, for the alleged wrongful deaths of the decedents. KRS 44.070 to 44.160. The Board made maximum awards in each of the claims, and the Department appealed to the Hopkins Circuit Court which reversed the awards and entered judgment in favor of the Department. This appeal seeks reversal of that judgment of the circuit court.

The accident occurred about 2 p. m. Rain was falling at the time of the accident and had been falling for several hours. The roadway was covered with approximately two inches of water at the site of the accident. The highway was straight for southbound traffic for about 900 feet as Gregory traveled on a slight downgrade. He testified that he did not see the water which was flooding across the road until his car entered the flooded area. He explained that the generally wet condition of the surface of the highway and the contour of the road caused him to believe that the road ahead of him was clear except for the normal precipitation which he had encountered along the way. Gregory had not traveled along Highway 41A prior to the accident.

The highway maintenance foreman for Hopkins County testified that he visited the accident scene about 8:30 a. m. on the day of the accident. He said water was flowing across the road at that point, although he could not accurately recall its depth. He testified that he did not have any warning flares or other signals with him at that time, but had resolved to reexamine the scene during the day with a view to taking precautionary steps if the situation worsened. The foreman related that he and his work force of about forty men were on duty until midnight undertaking to place warnings and rectify many dangerous conditions created by the excessive rainfall which had occurred. Flares were placed at the site of the accident on the fatal day, but not until after the accident occurred. The following question and answer appear in the foreman's testimony:

"Q.23. Well, let me ask this, if the water had been two inches deep at that particular place, would you have put flares out?

A. Ordinarily, yes, I would. Around two inches, I would think, I would put the flares out."

A person living near the scene testified that he was present when the foreman inspected at about 8:30 a. m. This witness said that the water was two inches in depth over the highway at that time. He described the scene and deposed that the flooding condition there had been a recurring matter of which he and others had complained to the Department of Highway officials. This witness expressed the view that much of the problem was attributable to the clogged condition of the drainage ditches alongside the highway. He said these ditches were overburdened with trash, weeds, and other debris. In this connection, the maintenance foreman testified that the ditches had been cleaned out about two or three years before the accident. The foreman said that the flooding problem had been alleviated for quite some time after the ditches had been cleaned. It

is apparent from the foreman's evidence that the flooding problem had recurred and was known to the highway officials.

KRS 44.140 prescribes the scope of judicial review on an appeal to the circuit court from an award of the Board of Claims, providing in part that the circuit court's review shall be limited to determining:

"Whether or not the board acted without or in excess of its powers; the award was procured by fraud; the award is not in conformity to the provisions of KRS 44.070 to 44.160; and whether the findings of fact support the award."

In reversing the award, the circuit court relied principally upon Commonwealth, Department of Highways v. Brown, Ky., 346 S.W.2d 24. In Brown the accident was caused by the icy condition of a curve on a highway. The road, except for the curve, was clear, and the Commonwealth had been fully aware of the icy condition of the curve for at least thirty-six hours before the accident. The condition was obscured to motorists by reason of the curve. This court reversed a circuit court judgment upholding an award by the Board to the plaintiff. The question presented in Brown was expressed by the court as follows: "Was it the duty of the Commonwealth to remove the snow and ice from the highway or to give warning of a dangerous condition caused by the natural accumulation of ice and snow on its surface?" Id. 346 S.W.2d 24. It was held that the Commonwealth had no such duty, although it was recognized that in some instances the Commonwealth is subject to liability because of defects and obstructions known by the Commonwealth to exist. Commonwealth v. Dever, 284 Ky. 150, 143 S.W.2d 1065, and Shrader v. Commonwealth, 309 Ky. 553, 218 S.W.2d 406, were cited as examples of such instances. The rationale of Brown is succinctly stated in the opinion:

"The natural accumulation of snow and ice does not however constitute such a defect or obstruction, and the Commonwealth's practice of removing it is a mere gratuity which may with immunity be abandoned at any time." Id. 346 S.W.2d 25.

It is unnecessary to determine whether the rationale of Brown is entirely sound. Some subsequent decisions of this court create some doubt about it. The basis of the Brown decision appears to be that the Commonwealth could not be subjected to liability because it had in no way contributed to the hazardous condition of the curve. The evidence in the present case does not warrant such a conclusion, because the Commonwealth did contribute to the hazardous condition by reason of its alleged failure to maintain the drainage ditches in an appropriate working condition.

The appellants and the appellee recognize that the Department is not an insurer against accidents arising from defects or dangerous conditions on the public road and that its duty is to exercise ordinary care to prevent injury from defects in the highway. That general principle is recognized in several decisions including Com., Dept. of Highways v. Compton, Ky., 387 S.W.2d 314; Com., Dept. of Highways v. Higdon, Ky., 383 S.W.2d 331; Com., Dept. of Highways v. General and Excess Ins. Co., Ky., 355 S.W.2d 695; Com., Dept. of Highways v. Young, Ky., 354 S.W.2d 23. See also annotation on the subject, 61 A.L.R.2d 425, et seq.

It seems plain that there was sufficient evidence to warrant a finding by the Board of Claims that a dangerous condition existed on the highway and that the condition was attributable in large measure to the previous and continuing failure of the Department of Highways in maintaining the drainage ditches. All of this was actually known by the officials of the Department charged with the responsibility in the premises. In these circumstances, the Board was warranted in finding that the

Department's failure to afford adequate, or any, warning of the condition constituted negligent conduct making it subject to liability. The Board's finding of negligence on the part of the Department, being supported by substantial evidence, may not be disturbed on judicial review.

There remains to consider whether, as a matter of law, Gregory Smith was guilty of negligence and, if so, whether his negligence was the sole cause of the accident. It will be remembered that Kay Smith and Dwight Smith were passengers in Gregory's automobile, and there is no intimation of any circumstance by which the negligence of Gregory Smith could be legally attributed to either of them. As will be observed by reference to the annotation in 61 A.L.R.2d 425, in some instances it has been held that a driver who encountered an accumulation of water on a highway in the daytime was guilty of contributory negligence as a matter of law because the presence of the water was in itself a sufficient warning of the danger. Those decisions, however, do not resolve the question at hand. The issue is whether the negligence of the Department was a contributing proximate cause to the accident. Even if it could be said that Gregory Smith was guilty of contributory negligence, so as to bar any claim of his, it does not follow that the claims for the estates of Kay and Dwight are thereby extinguished. The court is of the view that there was substantial evidence before the Board to warrant a finding that the Department was negligent and that its negligence was a proximate cause of the accident and ensuing deaths of Kay and Dwight Smith. Therefore, there was no legal basis for the circuit court's judgment upsetting the finding and award of the Board of Claims.

The judgment is reversed with directions to enter a new judgment affirming the award of the Board of Claims.

All concur.